**In re ENVIRODYNE INDUSTRIES, INC., et al., Debtors.**

**ENVIRODYNE INDUSTRIES, INC., Plaintiff,**

v.

**CONNECTICUT MUTUAL LIFE COMPANY, The Cooper Companies, Inc., Presidential Life Insurance Company, M D Sass Re/Enterprise Partners L.P., and Gruss Partners, Defendants.**

Bankruptcy Nos. 93 B 310, 93 B 312, 93 B 316, 93 B 318, 93 B 319 and 94 A 00797.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 1, 1994.

Allan S. Brilliant, Holleb & Coff, Chicago, IL, for debtors/plaintiff.

Julian Solotorovsky, Kelley Drye & Warren, Chicago, IL, for defendant Connecticut Mutual Life Co.

David S. Kurtz, Jones, Day, Reavis & Pogue, Chicago, IL, for Cooper Companies, Inc.

Steven J. Harper, Kirkland & Ellis, Chicago, IL, for Gruss Partners.

*MEMORANDUM OPINION*

*DEFENDANTS' MOTION TO DISMISS*

JOHN D. SCHWARTZ, Chief Judge.

The matter before the court is the Motion of Connecticut Mutual Life Insurance Company, The Cooper Companies, Inc., Presidential Life Insurance Company ("Presidential"), M D Sass RE/Enterprise Partners L.P., and Gruss Partners ("Gruss") (these parties shall be collectively referred to as "Defendants") to Dismiss the complaint of Envirodyne Industries, Inc. ("Envirodyne"). Envirodyne alleges that the Defendants, by filing an involuntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330), breached the Indenture by which they were bound. The Defendants maintain that the Order confirming Envirodyne's plan of reorganization prevents Envirodyne from pursuing this action on the grounds of res judicata, equitable estoppel, or judicial estoppel; that the Indenture provisions do not preclude suits for overdue interest; and that the Indenture does not provide a cause of action to Envirodyne. After considering the Defendants' Memorandum in Support of Motion To Dismiss, Reply Memorandum, Response to Envirodyne's Supplemental Memorandum, and Response to Envirodyne's Reply to Defendants' Response; and Envirodyne's Response to Motion to Dismiss, Supplemental Memorandum, and Reply to Defendants' Memorandum in Response to Envirodyne's Supplemental Memorandum, the court shall grant the Defendants' Motion to Dismiss because the Defendants' filing of an involuntary petition against Envirodyne to seek the payment of overdue interest was not a breach of the Indenture.

*BACKGROUND*

On January 6, 1993, the Defendants filed an involuntary bankruptcy petition against Envirodyne in the United States Bankruptcy Court for the Northern District of Illinois. Each Defendant was the holder of 13½% (originally 12%) notes ("Notes") under an indenture dated June 15, 1986 [1] and due June 15, 1996 between Envirodyne and Continental Illinois National Bank and Trust Company of Chicago, as trustee ("Indenture").[2] Earlier on January 6, the Defendants notified the Trustee of the impending bankruptcy petition. The next day, Envirodyne and

---

1. On August 10, 1989, pursuant to an amended Indenture, the interest rate on the Notes were increased from 12.0 to 13½%. *See* First Supplemental Indenture Dated as of August 10, 1989 to Indenture Dated as of June 15, 1986.

2. The holders of these Notes shall be referred to as Noteholders.

certain of its subsidiaries ("Debtors") filed voluntary chapter 11 petitions in order to put the reorganization on a "fast track" [3] to mitigate the long term damage to the Debtors.

The reorganization proceeded expeditiously and on December 17, 1993, Envirodyne's plan of reorganization was confirmed.[4] On March 30, 1994, Envirodyne filed this action in the Circuit Court of Cook County Illinois, Law Division. On or about April 29, 1994, the Defendants' petition to have the case removed to this court was granted. In response to the Defendants' allegations that res judicata or estoppel should preclude this action, Envirodyne alleges the following: that while it did not disclose the likelihood of it filing this breach of contract suit in either its Plan or related Disclosure Statement, it did include a general provision in Order No. 164, as well as the Plan and Disclosure Statement, stating that:

> ... on the Effective Date, the Reorganized Debtors will be vested with title to all of the property of their respective Estates, regardless of whether scheduled by the Debtors, including, without limitation, all causes of action of any kind whatsoever not otherwise released pursuant to the terms of the Plan, free and clear of all liens, claims, encumbrances, charges and other interests of creditors and equity security holders, in accordance with section 1141 of the Bankruptcy Code ...

Order No. 164 at 6; *See also* Debtors' Disclosure Statement at 50; Plan at § 8.03. In addition, Envirodyne asserts that the Defendants were made aware of the possibility of this suit prior to the confirmation of its Plan. In its First Interim Application for Allowance and Payment of Attorneys' Fees and Reimbursement of Expenses Pursuant to Sections 330 and 331 of the Bankruptcy Code filed on May 26, 1993 ("Application"), Envirodyne reported that it had spent time re-

searching potential causes of action against the Defendants for damages resulting from the filing of the involuntary petition. Specifically, it stated that it was investigating a breach of contract action against the Defendants for violating § 6.04 of the Indenture. *See* Application at 28. More importantly, in conjunction with the preparation for hearings on the adequacy of the disclosure statement, Envirodyne's counsel served discovery requests on all of the Defendants, seeking " 'all documents concerning, ... and/or explaining the involuntary filing,' the relationship between the Defendants *or any communications between the Defendants.*" *See* Plaintiff's Response to Defendants' Motion to Dismiss at 3. Further, the Unofficial Committee of 13½ % Noteholders ("Unofficial Committee")[5], in a fee application, acknowledged Envirodyne's investigation by stating that "the Debtors' discovery program apparently was designed in substantial part to fish for information regarding the propriety of the filing of the involuntary petition in January, 1993." *See* Plaintiff's Response to Defendants' Motion to Dismiss at 4, *citing* Unofficial Committee's Fee Application at 19, ¶ 31, n. 6. Finally, during the hearings on the Unofficial Committee's objections to and motion to quash Envirodyne's discovery requests, one of Envirodyne's attorneys stated that Envirodyne was seriously considering filing charges against the Defendants after its attorneys completed their investigation. *See* Transcript of Proceedings Before the Honorable John D. Schwartz, September 8, 1994, pp. 96–97.

Next, in connection with the Defendants' contractual arguments, Envirodyne argues that the terms of the Notes and the Indenture support its position that the Defendants' breached the specific terms of the Indenture. On the face of each Note, Envirodyne agreed to pay interest semiannually on June 15 and

---

**3.** In this case, the term "fast track" refers to the relative speed in which the Plan was developed and confirmed, as opposed to a "pre-packaged" bankruptcy to which this term usually refers.

**4.** *See, In re Envirodyne Indus., Inc.*, Docket 93 B 319 (Bankr.N.D.Ill. Dec. 17, 1993) (Order No. 164 Confirming Debtors' First Amended Plan of Reorganization as Twice Modified ("Plan")) ("Order No. 164"); *In re Envirodyne Indus., Inc.*,

1993 WL 566565 (Bankr.N.D.Ill.1993) (Findings of Fact and Conclusions of Law); *In re Envirodyne Indus., Inc.*, 1993 WL 566566 (Bankr. N.D.Ill.1993) (Memorandum Opinion).

**5.** The Unofficial Committee was formed to represent the interests of certain holders of the 13½% Notes, including the Defendants, in the Envirodyne bankruptcy proceedings.

December 15 of each year, commencing December 15, 1986 and continuing until 1996. When the involuntary petition was filed, Envirodyne had missed several interest payments. Notwithstanding the provisions of § 6.04 of the Indenture, the Defendants filed their involuntary petition as a means to obtain payment of the past due interest owed to them. Envirodyne maintains that, by not adhering § 6.04 of the Indenture when filing their involuntary petition, the Defendants breached the Indenture and caused substantial damage to the Debtors.

Section § 6.04 of the Indenture provides that:

No holder of any Note shall have any right by virtue of or by availing itself of any provision of this Indenture to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or for the appointment of a receiver or trustee or for any other remedy hereunder, unless such holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than 25% in aggregate principal amount of the Notes then outstanding shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding, and no direction inconsistent with such written request has been given to the Trustee during such 60–day period by the holders of a majority in aggregate principal amount of the Notes; it being understood and intended, and being expressly covenanted by the taker and holder of every Note with every other taker and holder and the Trustee, that no one or more holders of Notes shall have any right in any manner whatever by vir-

tue of or by availing of any provision of this Indenture to affect, disturb or prejudice the rights of any other holder of such Notes, or to obtain or seek to obtain priority over or preference to any other such holder or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all holders of Notes and subject in all cases to Article Fifteen.[6]

Notwithstanding any other provisions in this Indenture, however, the right of any holder of any Note, subject to Article Fifteen, to receive payment of the principal of (and premium, if any) and interest on such Note, on or after the respective due dates expressed in such Note, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder.

Indenture at § 6.04 (This clause shall hereinafter be referred to in its entirety as the "No Action Clause" or "Section 6.04" and the second paragraph of the clause as the "Principal and Interest Exception").

### STANDARDS FOR A MOTION TO DISMISS

The Defendants' Motion to Dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6) which is made applicable to this adversary proceeding through Fed.R.Bankr.P. 7012. In a motion to dismiss, the court must view the facts in the light most favorable to the non-moving party. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). *In re Urban Health Services, Ltd.*, 154 B.R. 486, 487 (Bankr.N.D.Ill.1993). The court should only grant a motion to dismiss if it appears beyond question that the plaintiff can prove no set of facts that would entitle it to relief. *W.E. O'Neil Construction Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 721 F.Supp. 984, 986 (N.D.Ill.1989), citing, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

---

**6.** Article Fifteen contains the subordination provisions of the Indenture. For purposes of this cause of action, these provisions are not relevant.

## DISCUSSION

### I. *Res Judicata and Estoppel*

 The doctrine of res judicata precludes relitigation of matters that were or could have been litigated in an earlier proceeding. *Levinson v. United States*, 969 F.2d 260, 262 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992); *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 n. 2 (7th Cir.1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). It is appropriate to apply res judicata if, between the prior and present litigation, there is: 1) an identity of the parties or their privies; 2) an identity of causes of action; and 3) a final judgment on the merits in the prior litigation. *Barnett v. Stern*, 909 F.2d 973, 978 (7th Cir.1990). Envirodyne contests each of these elements.

Initially, Envirodyne argues that the identity of the parties branch of the res judicata tree is broken as two of the Defendants, Gruss and Presidential, sold their Notes prior to the commencement of the confirmation hearing and therefore were not a party to such hearing. Although both parties agree that the issues before this court were not previously litigated, they disagree as to the effect the conclusion of the confirmation hearing has on this proceeding. Envirodyne argues that since the issues in this action were not litigated, there is no identity of causes of action and, consequently, there could not have been a final judgement on the merits. The Defendants argue that since this action could have been litigated prior to confirmation, further litigation should now be precluded. Envirodyne does not dispute that these issues could have been litigated prior to confirmation. Rather, it argues that the "fast track" nature of the Envirodyne bankruptcy proceedings prevented a full investigation of the breach of contract claims alleged in the Complaint prior to confirmation.

Further, Envirodyne alleges that since the Defendants were aware of the possibility of this litigation prior to the conclusion of the confirmation hearing, it would be unjust to apply the doctrines of res judicata or estoppel in this case. In response, the Defendants maintain that, at a minimum, an action worth $100 million should have been disclosed in the Disclosure Statement or Plan. Further, that statements relating to the likelihood of this action, made pre-confirmation by Envirodyne's counsel, both in court and in various fee applications, were insufficient to put them on notice.

The Defendants' arguments that the principles of res judicata should be applied to preclude Envirodyne from pursing this action might be persuasive if future causes of action were not reserved for in the Disclosure Statement, Plan, and Order of Confirmation (Order No. 164). It might be a better policy for Envirodyne to have specifically disclosed the possibility of bringing an action of this magnitude in the Disclosure Statement as its lawyers, and presumably its senior executives, were well aware of the potential for this suit. But, the Debtors failure to reserve such an action was not fatal. When preparing a disclosure statement, debtors are often faced with a "Hobson's Choice" [7] in deciding whether to disclose actions of this nature. This case may be one of those situations. Regardless, the Defendants were not harmed. Although the Bankruptcy Code is not clear with respect to the amount of disclosure that is necessary in this area, the statute of limitations contained in 11 U.S.C. § 546(a)(1) affords defendants sufficient protection against tardily filed suits. This action was filed within this statute of limitations. Accordingly, any damage to the Defendants caused by Envirodyne's lack of disclosure was minimal.[8]

It is not necessary for the court to adopt the strict application of res judicata advanced

---

7. An apparently free choice when there is no alternative. *Webster's Ninth Collegiate Dictionary* 574 (9th ed. 1983). The origin of this phrase goes back to the 1600's when an English liveryman, Thomas Hobson, required every customer to take the horse nearest the door. *Id.*

8. Similarly, the court rejects the Defendants contention that Envirodyne was preempted by 11 U.S.C. 303(i) from bringing this action. The reservation contained in the Disclosure Statement was sufficient to enable Envirodyne to file this action. *See* Disclosure Statement at 50; *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3rd Cir.1988).

by Defendants, or the more liberal view advocated by Envirodyne as, for reasons discussed below, the Defendants' were within their rights to file an involuntary petition to seek the payment of past due interest. As it is not necessary to the resolution of the Defendant's Motion to Dismiss, the court shall refrain from entering the res judicata quagmire that the parties are embroiled in.[9]

## II. *No Action Clause*

█ Issuers of bonds [10] include no action clauses in indentures to preclude a small number of bondholders from taking action against the issuer of the bonds without first presenting the action to the trustee and giving it an opportunity to act on the complaint on behalf of all holders. *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 859 F.Supp. 743, 747 (S.D.N.Y.1994); *UPIC*, 793 F.Supp. at 454, *citing*, American Bar Foundation, Commentaries on Model Debenture Indenture Provisions 234 (1971) ("Commentaries"). Where such clauses are included, they are to be strictly construed and adhered to. *Cruden v. Bank of New York*, 957 F.2d 961, 967 (2nd Cir.1992). Notwithstanding such clauses, bondholders have an absolute right to seek the payment of overdue principal and interest. *Cruden*, 957 F.2d at 968 (no action clause does not affect the ability of debenture holders to bring a suit after nonpayment of principal and interest); *McMahan & Co.*, 859 F.Supp. at 748; *UPIC*, 793 F.Supp. at 454. The Defendants insist that the No Action Clause in the Indenture does not affect the right of any Noteholder to seek the payment of overdue interest. An action brought seeking payment of such interest is one in accordance with the terms of the Notes and is not related to the enforcement of the terms of the Indenture. Even if it was related to the Indenture, it is an action that falls under the exception contained therein. In opposition, Envirodyne asserts that Indenture § 6.04 precluded the Defendants from instituting "any suit or proceeding in equity or at law upon or under or with respect to this Indenture." *See*, Indenture,

§ 6.04. In addition, even if § 6.04 did not preclude unilateral actions to seek payment of past due interest, an involuntary petition was an improper means to procure such payment and should not be permitted without complying with the No Action Clause.

### A. *An action seeking the payment of unpaid interest is one "under the Notes" and not one "under the Indenture"*

█ The first issue that must be addressed is whether an action seeking payment of delinquent interest is a suit "under the Indenture," requiring compliance with the No Action Clause, or an independent action "under the Notes." It is not contested that the Defendants did not adhere to the requirements of the No Action Clause. Instead, the Defendants maintain that the filing of an action to obtain payment of past due interest is one "under the Notes" and is within their absolute powers as Noteholders. Therefore, the involuntary petition was a proper method of seeking such payment, provided that the requirements of § 303(b) of the Bankruptcy Code (11 U.S.C. § 303(b)) are satisfied. It is undisputed that the Defendants qualify under § 303(b) to institute an involuntary petition. However, Envirodyne argues that the Defendants, by agreeing to the terms of the Indenture, contracted away their right to file an involuntary petition without first complying with the terms of the No Action Clause.

Initially, the Defendants analogize their action with the filing of a federal securities case. If a bondholder alleges that an issuer of bonds has violated federal securities laws, then it has the unfettered right to bring a direct action, without complying with the no action clause. *Kusner v. First Pennsylvania Corp.*, 531 F.2d 1234, 1239 (3rd Cir.1976); *Acacia Nat'l Life Ins. Co. v. Kay Jewelers, Inc.*, 203 A.D.2d 40, 43, 610 N.Y.S.2d 209 (1st Dep't N.Y.1994). While facially appealing, these cases do not assist the Defendants as Envirodyne's failure to timely pay the inter-

---

9. Similarly, it is unnecessary for the court to determine whether Envirodyne should be equitably, judicially, or just plain estopped from bringing this action.

10. In this context, the term "bonds" and the term "notes" are used interchangeably. *Cf. UPIC & Co. v. Kinder–Care Learning Centers, Inc.*, 793 F.Supp. 448, 450 n. 2 (S.D.N.Y.1992).

est due on its Notes is not akin to a violation of a federal law.

The Principal and Interest Exception to the No Action Clause that grants Noteholders the right to pursue an action for past due interest is required in all indentures by the Trust Indenture Act of 1939 (TIA), 15 U.S.C. §§ 77aaa–77bbbb. TIA § 316(b), 15 U.S.C. § 77ppp(b), provides in relevant part that:

> The indenture to be qualified shall provide that, notwithstanding any other provision thereof, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder . . .

This provision is mandatory in order to assure the negotiability of the debentures by making certain that the promise to pay contained therein was unconditional. *Cruden,* 957 F.2d at 968 (no action clause does not affect the ability of debenture holders to bring a suit after non payment of principal or interest); *McMahan,* 859 F.Supp. at 748; *UPIC,* 793 F.Supp. at 454. The legislative history of TIA § 316(b) also supports the unequivocal right of a Noteholder to pursue an action for principal and interest. *See* House Comm. Report No. 1016, 76th Cong., 1st Sess. at 56 (1939) ("the right of any indenture security holder to receive his principal and interest when due and to bring suit therefor[e] may not be impaired without his consent. Evasion of judicial scrutiny of the fairness of debt-readjustment plans is prevented by this prohibition . . ."); Senate Comm. on Banking and Currency, Trust Indenture Act of 1939: Report to Accompany S. 2065, S.Rep. No. 248, 76th Cong. 1st Sess. 26–27 (1939).

It seems academic that regardless of whether a suit to obtain payment of overdue interest is one "under the Indenture" or one "under the Notes", that an issuer of bonds may not limit the right of a bondholder to bring an action to procure such interest. Nevertheless, the court will address the issue as the parties have thoroughly briefed it. Envirodyne relies on *Feldbaum v. McCrory Corp.,* 1992 WL 119095 at *11 n. 11, 1992 Del.Ch. LEXIS 113 at *21 n. 11 (Del.Ch. 1992) to support its position that the Defendants waived their right to bring any action without first complying with the notice provisions of the No Action Clause. In *Feldbaum,* the plaintiffs instituted an action against an issuer of bonds alleging a fraudulent conveyance, breaches of implied covenants of good faith and fair dealing and common law fraud. After reiterating the purposes of a no action clause, including the protection of the majority of bondholders against the exercise of poor judgement by a single or minority group of bondholders, the court in *Feldbaum* determined that the bondholders had waived their rights to bring such actions without first complying with the terms of the no action clause. *Id.* at *7, 1992 Del.Ch. LEXIS 113 at *17. But, the application of TIA § 316(b) was not before the court in *Feldbaum* as the case did not involve delinquent interest payments. Further, although a no action clause does result in bondholders waiving their right to bring certain claims, the *Feldbaum* court did observe that such a waiver would not apply if the bondholders' claims were for payment of past due interest. *Id.* at *11, 1992 Del.Ch. LEXIS 113 at *22. The instant case is an example where such a waiver would not apply, provided that the Defendants filed the involuntary petition to obtain payment of past due interest.

In further support of its position that the Defendants' suit is one under the Indenture, Envirodyne relies on three cases allegedly on point, two unpublished opinions, *In re Iroquois Brands, Ltd.,* 1991 Bankr. LEXIS 1915 (Bankr.S.D.Tex. March 7, 1991), *vacated,* Case No. 91–01018–H3–11 (Bankr.S.D.Tex. May 24, 1991) and *In re Electro Audio Dynamics, Inc.,* Case No. 888 81406–20 (Bankr. E.D.N.Y.1989), and an oral ruling, *In re The Marcade Group,* Case No. 92 B 43920 (S.D.N.Y. Aug. 7, 1992) (transcript). In these cases, all related to the issue of standing to bring a bankruptcy case, the provisions of the relevant no action clauses were not adhered to by the bondholders filing the

involuntary petition. In each, the respective debtor's motion to dismiss the involuntary petition was granted. In other words, all three courts found the filing of an involuntary bankruptcy petition to be a suit "under the Indenture" requiring compliance with the respective no action clauses.

*Electro Audio* involved an attempt by bondholders to commence a proceeding for the appointment of a receiver. Accordingly, it was not commenced to procure the payment of overdue interest and therefore is dissimilar to the Defendants' case. On the other hand, both *Iroquois* and *Marcade* involve suits by bondholders after the issuer had defaulted on interest payments. In denying the bondholders standing, both courts relied on the respective bondholders failure to comply with the no action clause. However, neither court attempted to reconcile its conclusion with the principal and interest exception that must have been included in the respective indentures pursuant to TIA § 316(b).

In *Iroquois,* the court relied primarily on *Friedman v. Chesapeake & O. Ry. Co.,* 395 F.2d 663, 664 (2d Cir.1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969). However, this reliance was misplaced because the indenture in *Friedman* was issued pursuant to the authority of the Interstate Commerce Commission, in accordance with 49 U.S.C. § 20a. The plaintiff's arguments relating to § 316(b) were rejected because § 316(b) is not applicable to bonds issued under 49 U.S.C. § 20a. *See Friedman,* 395 F.2d at 730, *citing,* 15 U.S.C. § 77ddd(a); 15 U.S.C. § 77c(a)(6). As § 316(b) did not apply, the court in *Friedman* did not have reason to reconcile it with the no action clause.

Of the other cases relied by the *Iroquois* court, none required the reconciliation of § 316(b) with a no action clause. *See, Sutter v. Hudson Coal Co.,* 259 A.D. 1053, 21 N.Y.S.2d 40, 41 (N.Y.App.Div.1940) (§ 316(b) was neither discussed or referred to); *Relmar Holding Co. v. Paramount Publix Corp.,* 147 Misc. 824, 263 N.Y.S. 776, 778 (N.Y.Sup.Ct.1932); *aff'd,* 237 A.D. 870, 261 N.Y.S. 959 (N.Y.App.Div.1933) (decided prior

to the enactment of the Trust Indenture Act). Accordingly, as the decision in *Iroquois* has been vacated and neither it nor the cases that it relied on discussed or referred to § 316(b), the decision in *Iroquois* is neither persuasive nor informative with respect to the issues before this court.

Finally, the last case relied on by Envirodyne with respect to its interpretation of the No Action Clause is *Marcade.* The court finds this opinion of little assistance as it relied exclusively on the vacated opinion of *Iroquois* in deciding to dismiss the involuntary petition. However, the court acknowledges that the policy arguments made in *Marcade* were also made by counsel in this case and will be addressed below.[11] But, for purposes of determining whether a suit to obtain overdue interest is one "under the Indenture," the decision is not relevant.

Unlike the cases relied upon by Envirodyne, this action arises in the context of a post confirmation proceeding. In this manner, it is one of first impression. However, the principles necessary to determine the validity of the Defendants actions are unaffected. The court does not disagree with Envirodyne's assertion that an issuer of bonds has the right to limit a bondholder's right to bring certain actions. *See Simons v. Cogan,* 542 A.2d 785, 793 (Del.Ch.1987), *aff'd,* 549 A.2d 300 (Del.S.Ct.1988). However, Envirodyne's conclusion that its Indenture limits suits to obtain the payment of past due interest is without merit. The right to receive interest semiannually is granted on the face of the Notes, and any suit related to this right is not subject to any limitations that may be contained in the Indenture. *UPIC,* 793 F.Supp. at 453–56; *See also Cruden,* 957 F.2d 961, 968 (indenture does not preclude suits for missed principal or interest payments); *Watts v. Missouri–Kansas–Texas R.R. Co.,* 383 F.2d 571, 572 (5th Cir.1967); *McMahan,* 859 F.Supp. at 748. Accordingly, such an action must be one "under the Notes" as opposed to one "under the Indenture." *UPIC,* 793 F.Supp. at 453–56.

In *UPIC,* an action brought by an individual noteholder to obtain payment of overdue

11. *See infra,* discussion in part B.

interest, the court found not only that TIA § 316(b) overrides the notice requirements of the no action clause but that the no action clause is not applicable to cases brought under the exception. *Id.* at 454. In reaching its decision, the court discussed the policy implications of allowing individual noteholders to bring independent actions to force an issuer to remit past due interest:

Section 316(b) tends to force recapitalization into bankruptcy court by frustrating a distressed firm's efforts to successfully complete a consensual workout. When a distressed or nearly bankrupt firm seeks to reorganize its financial structure, the incentives among those financially interested in the firm would generally be to contract to the efficient solution and avoid the transaction costs of a bankruptcy proceeding. R.H. Coase, The Problem of Social Cost, 3 J.L. & Econ. 1 (1960); *In re Chateaugay Corp.*, 961 F.2d 378 (2d Cir.1992) ("The debtor and its creditors share an interest in achieving a successful restructuring of the debtor's financial obligations in order to avoid the uncertainties and daunting transaction costs of bankruptcy."). In a workout affecting bondholders, however, Section 316(b) tends to frustrate such a consensual workout. By guaranteeing a bondholder's right to receive payment of the principal of or interest on the security, Section 316(b) creates a disincentive for bondholders to exchange their bonds for stock or for bonds with different terms. Bondholders aware of the perceived advantage of refusing to participate in the workout—payment in full after, and if, the recapitalization succeeds—will do so, seeking to benefit from the workout at the expense of those who would renegotiate their credits or offer new capital. The holdouts thus seek to be "buoyed-up" by the workout's participants.

The "buoying-up" effect places the distressed firm under further stress. In order to overcome the effect, nearly equal treatment of bondholders is necessary since equal treatment reduces the incentive for bondholders to hold out.[6] [Footnote original.] A reduced incentive to hold out enhances the firm's ability to achieve near unanimous agreement on the terms of

any contemplated recapitalization and thereby increases the chances of a successful consensual workout. Without equal treatment of creditors, the near consensual unanimity necessary for a successful workout is frustrated by holdouts and the buoying-up effect, and the workout fails. *See* Bond Workouts, supra, n. 4, at 234. The Securities Exchange Commission was undoubtedly aware that requiring unanimity in bondholder voting—rather than mere majority action—would frustrate consensual workouts and help induce bankruptcy. And convinced that insiders or quasi-insiders would damage bondholders, the Commission welcomed the prospect. See Bond Workouts, at 234 n. 4.

---

6. That is, creditors with the same priority would be treated equally but subject to previously established unequal priority arrangements among classes of creditors. *See* Mark J. Roe, The Voting Prohibition in Bond Workouts, 97 Yale L.J. 232, 234 (Dec. 1987) (hereinafter "Bond Workouts") [complete citation provided].

*UPIC*, 793 F.Supp. at 453; *See also, Continental Bank & Trust Co. of N.Y. v. First Nat. Petroleum Trust*, 67 F.Supp. 859, 870–871 (D.R.I.1946). Despite these policy concerns, the court in *UPIC* allowed a noteholder to pursue its action for past due interest without adhering to the terms of the indenture. *UPIC*, 793 F.Supp. at 453. In order to reflect a noteholders' absolute and unconditional statutory right to bring an action for interest due and owing under an indenture, no action clauses are drafted so as to apply only to actions "under" or "with respect to" the indenture, and not to actions by a noteholder for payment of principal and interest due under a note. *Id.; citing,* Commentaries at 233. The reasoning in *UPIC* is equally applicable to the issues before this court. Therefore, in the instant case, the No Action Clause neither applies to, nor affects, the Defendants right to pursue an action for payment of past due interest.

■ This conclusion is buttressed by the plain language of the Principal and Interest Exception, TIA § 316(b), the legislative history to § 316(b) discussed above, and the case law and commentaries on bond inden-

tures. Regardless of whether one considers this action as one "under the Indenture" or "under the Notes," the result is identical. While this court considers an action seeking the payment of unpaid interest to be one "under the Notes," under either the Indenture or the Notes, if the Defendants filed their involuntary petition to seek past due interest, then compliance with the requirements of § 6.04 of the Indenture was not necessary.

B. *The Defendants' filing of an involuntary bankruptcy petition against Envirodyne was an action seeking the payment of past due interest*

Having concluded that compliance with the provisions of the No Action Clause is not necessary in actions seeking the payment of past due interest, the court turns to Envirodyne's next argument, that the Principal and Interest Exception, and by implication TIA § 316(b), does not permit the filing of a collective action such as an involuntary bankruptcy petition as a method to obtain payment of delinquent interest. Envirodyne seems to concede that individual noteholders may pursue actions to seek the payment of unpaid interest without complying with a no action clause. *See* Plaintiff's Response to Defendants' Motion to Dismiss at 18–19; However, Envirodyne argues that a group of noteholders may not collectively sue for such interest. *Id.* Alternatively, they seem to argue that an involuntary bankruptcy is not an action seeking the payment of past due interest. *Id.*

■■■■ Envirodyne's arguments must be examined in the context of the language contained in the Principal and Interest Exception and the statute that gave rise to the exception, TIA § 316(b). As always, the starting point when interpreting a statute is the language of the statute itself. *Ardestani v. Immigration and Naturalization Service*, 502 U.S. 129, ——, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991), *citing, United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). Section 316(b) does not contain any limitations as to what remedies a bondholder may pursue when seeking payment of delinquent principal and interest. It merely states that a noteholder's

right to pursue an action for unpaid interest must remain unimpaired. § 316(b). Next, neither the language of the Indenture nor the Notes contain any language describing or limiting the types of actions that may be brought to obtain such payment. Finally, Envirodyne itself does not state any authority to support its argument that the court should thwart such collective actions. There is no basis for this court to bar, or impose a limitation on, the bringing of collective actions that seek the payment of past due interest on bonds or notes.

■■■■ Consequently, the only remaining question is whether the filing of an involuntary petition may be construed as a suit to seek the payment of past due interest. While such a suit is not expressly permitted, historically, bondholders have long been able to bring such actions when an issuer of bonds has defaulted on its bond payments. *See In the Matter of Maryvale Community Hospital, Inc.*, 456 F.2d 410, 413 (9th Cir.1972); *In re Woodmar Realty Co.*, 294 F.2d 785, 786 (7th Cir.1961), *cert. denied sub nom., Woodmar Realty Co. v. McLean*, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962); *In re New Valley Corp.*, 168 B.R. 73 (Bankr.D.N.J. 1994). Allowing three noteholders with unsecured claims over $5,000 to file an involuntary petition is indistinguishable from permitting three unsecured creditors, or even one noteholder and two unsecured creditors, with claims totaling $5,001 to file an involuntary petition against a multimillion dollar corporation. *See* 11 U.S.C. § 303(b) (describing the prerequisites for filing an involuntary petition). As the Bankruptcy Code was enacted to protect creditors as well as debtors, depriving the Defendants of the opportunity to file an involuntary petition would go against both the policies of the Bankruptcy Code as well as those of the Trust Indenture Act. *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 108 n. 2, 109 S.Ct. 2818, 2827 n. 2, 106 L.Ed.2d 76 (1989) (Marshall, J. dissenting) (listing Bankruptcy Code sections, including § 303(b), enacted to protect creditors); *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 303 (Bankr. S.D.N.Y.1994) (recognizing that protections of creditors is inherent in the Chapter 11 process); *In re CLE Corp.*, 59 B.R. 579, 584 (Bankr.N.D.Ga.1986). If Envirodyne seeks a

declaration that individual noteholders, who otherwise qualify under 11 U.S.C. § 303(b), are precluded from filing an involuntary petition, then it must take its argument to Congress. This court is unwilling to place such a restriction on the rights of the Defendants.

The court is not persuaded by the fears expressed by the bankruptcy judge in *Marcade*, 92 B 43920, Tr. at 16–18, concerning the effect of allowing bondholders to file involuntary petitions without complying with the no action clause, or with those expressed by Envirodyne. *See* Plaintiff's Response to Defendants' Motion to Dismiss at 18–19. Specifically, Envirodyne stated that allowing such actions would be to ignore the real world effect that the filing of an involuntary petition has on a debtor. *See* Plaintiff's Supplemental Memorandum in Response to Defendants' Motion to Dismiss at 19. Envirodyne states that it and companies in similar circumstances do not have a choice but to file a voluntary petition subsequent to the filing of an involuntary petition due to the cross-default clauses contained in its various loan and security agreements. The court is sympathetic to Envirodyne's perils and those faced by others in like circumstances, but, as stated above, the option of filing an involuntary petition against a debtor is one of the powers granted by Congress to creditors. Notwithstanding that the purpose of no action clauses may be subverted by allowing a small member of bondholders to file an involuntary bankruptcy, TIA § 316(b) and the Principal and Interest Exception clearly permit such an action to be filed.

The court finds that the Defendants filed their involuntary petition to obtain the payment of delinquent interest. Since § 303(b) was complied with, notwithstanding Envirodyne's unsubstantiated fears and arguments to the contrary, the Defendants' were, as a matter of law, within their rights under the Notes to file such a petition without complying with the terms of the No Action Clause. The court can find no reason why an involuntary petition cannot be filed as a means of obtaining delinquent interest due on notes or bonds.

## C. *Remaining Issues*

Numerous other issues were addressed by the parties in conjunction with the scope and breadth of the No Action Clause, including: whether the provisions of the No Action Clause were conditions precedent to bringing a lawsuit or whether such provisions were independent promises that could be sued upon if breached; whether the Indenture was a bilateral or unilateral contract; whether one section of the Indenture limits another section; and whether the Indenture gives Envirodyne the affirmative right to bring an action of this nature. As the court found that the Defendants' were not required comply with the provisions of the No Action Clause prior to the filing the involuntary petition, it is unnecessary for the court to address these issues. The No Action Clause and the issues pertinent to it are simply not relevant to actions brought to obtain the payment of past due interest.

## CONCLUSION

The Defendants' Motion to Dismiss Envirodyne's complaint shall be granted. The Defendants' use of an involuntary bankruptcy petition to seek the payment of unpaid interest was proper and compliance with the provisions of the No Action Clause contained in the Indenture was not required. Each party shall bear its own costs.