**FAIRBANKS NORTH STAR BOROUGH, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. S–4345.**

Supreme Court of Alaska.

Feb. 28, 1992.

Rehearing Denied March 24, 1992.

Ronald L. Baird, Bradbury, Bliss & Riordan, Anchorage, for appellant.

E. John Athens, Jr., Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

### I. INTRODUCTION

This appeal arises from an action filed by the Fairbanks North Star Borough (FNSB) against the State of Alaska for trespass, inverse condemnation, quiet title, ejectment, and rescission and restitution. The superior court held that, to the extent that FNSB's action turned upon a review of matters that were raised or could have been raised in a prior administrative hearing, the action was barred as an untimely appeal of an administrative determination. The superior court also held that the rescission and restitution claims were barred by the six-year statute of limitations provided by AS 09.10.120, and that *res judicata* barred the appeal. The superior court dismissed the case pursuant to Rule 54(b) of the Alaska Rules of Civil Procedure. FNSB appeals the superior court's decision to dismiss the action. We affirm.

### II. FACTS AND PROCEEDINGS

In June 1979, FNSB filed an application, pursuant to the municipal land entitlement program, for certain lands designated ADL 400700. In April 1981, the Department of Natural Resources (DNR) approved the selections of those lands. On April 22, 1981, FNSB and the state executed a Cooperative Easement Agreement (CEA) in order to provide a means for the future designation of easements for access to and across lands selected by FNSB as part of the municipal land entitlement program. The CEA provides in paragraph 2:

If access to State ... lands is required prior to development ... of Borough lands, the State in consultation with the Borough may designate an access easement or easements across the conveyed lands.

The CEA also provides that its terms will be incorporated by reference within all state patents conveying land to FNSB "where access easements appear necessary and have yet to be identified." In September 1981, DNR issued patent number 5978 which conveyed to FNSB Tracts G and H of ADL 400700, the land at issue in this case. The patent specified that it was issued subject to the CEA.

In August 1984, the Northern Regional Office of DNR stated in a letter to FNSB that it was invoking the CEA to designate an easement over Tracts G and H for the construction of a segment of the South Fairbanks Expressway. By letter dated September 6, 1984, FNSB rejected this proposed easement. In rejecting the invocation of the CEA, FNSB argued that the CEA was inapplicable to the project because the state did not seek a right of way for access, but rather "to facilitate traffic movement itself." In addition, FNSB claimed that the CEA was inapplicable because it is to be utilized only "where access easements appear necessary and have yet to be identified." FNSB complained that invocation of the CEA would result in a taking of more than 27 acres of land previously conveyed by the state and charged against FNSB's municipal entitlement.

Thereafter, pursuant to the procedure provided for in the CEA, the matter was appealed to the Director of the Division of Forest, Land and Water Management of DNR. The Director upheld the decision of the Northern Regional Office of DNR to invoke the CEA to obtain an easement for the South Fairbanks Expressway.

In January 1985, FNSB appealed the Director's decision to the Commissioner of DNR. FNSB again argued that the CEA could not be used to obtain the right-of-way for the South Fairbanks Expressway, claiming that the right-of-way sought by the state was intended to facilitate through

traffic, not access to adjacent lands. On May 14, 1985, Commissioner Wunnicke rendered a decision upholding the Director's decision.

Almost a year later, in January 1986, FNSB formally asked Commissioner Wunnicke to reconsider her decision. In seeking reconsideration, FNSB acknowledged that "[t]he question at hand seems to be one of interpretation of the Cooperative Easement Agreement." In April 1986, the request to reconsider was denied because it was untimely and presented no new information. FNSB was told that construction of the highway project had already begun.

FNSB again sought reconsideration of Commissioner Wunnicke's decision on August 8, 1988, this time before Commissioner Brady, the new Commissioner of DNR. In repeating its arguments for reconsideration, FNSB again acknowledged that the dispute turned on the interpretation of the CEA. Reconsideration was again denied for reasons similar to those previously identified. FNSB did not appeal the decision further.

On February 21, 1990, FNSB filed an action against the state as a result of the state's decision to invoke the CEA to designate an easement on Tracts G and H. FNSB argued that the CEA is unenforceable, void, or voidable because: (1) it is against public policy; (2) it was entered into as a result of unilateral or mutual mistake regarding the applicability of certain Alaska statutes; or (3) FNSB's assent to the CEA was induced by the innocent or negligent misrepresentation of the state regarding the applicability of those statutes. FNSB's complaint set forth four causes of action: trespass and inverse condemnation; quiet title; ejectment; and rescission and restitution. In its quiet title cause of action, FNSB claimed that the state has no interest in Tracts G and H and all other lands subject to the CEA.

The state moved to dismiss this action, arguing that the matters raised in the complaint were administratively adjudicated in 1984 and 1985, and thus barred by Alaska Rule of Appellate Procedure 602(a)(2) as an untimely appeal of an administrative decision. The state also argued that, to the extent FNSB's fourth cause of action for rescission and restitution was not a challenge to agency action, it should be dismissed because AS 09.10.120 imposes a six-year statute of limitations for actions in the name of political subdivisions.

FNSB responded to the state's motion to dismiss by arguing that the CEA authorizes DNR to adjudicate only those issues involving the width and location of easements, and that DNR's determinations of issues other than the width and location of easements were therefore not barred by Rule 602(a)(2). FNSB also argued that DNR had no authority under the agreement to determine whether the agreement itself was enforceable, and that DNR's determinations did not bar FNSB's claim that the CEA is unenforceable, void, or voidable. As to the state's claim that the statute of limitations barred the claims for rescission and restitution, FNSB argued that the statute of limitations was inapplicable because the claim was filed within six years of the state's entry on the plot.

Judge Savell held that Rule 602(a)(2) mandates dismissal of those FNSB claims which involve matters that were raised or could have been raised in DNR proceedings. He also held that the agreement between the state and FNSB was valid and that FNSB's rescission and restitution claims were barred by the six-year statute of limitations set forth in AS 09.10.120. He dismissed the complaint with the exception of the claim to quiet title to lands, not contained in Tracts G and H, which the state claims are governed by the CEA. This appeal followed.

## III. DISCUSSION

■ Appellate Rule 602(a)(2) provides that an appeal from an administrative agency to the superior court must be taken within 30 days from the date of the administrative decision. However denominated, a claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination. *Haynes v. State,* 746 P.2d 892, 893 (Alaska 1987); *Owsichek v. State,* 627 P.2d 616, 620

(Alaska 1981); *State v. Lundgren Pac. Constr. Co.*, 603 P.2d 889, 893 (Alaska 1979); *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 545 (Alaska 1975).

■ FNSB disagrees with the superior court's conclusion that Appellate Rule 602(a)(2) mandates dismissal of those claims that were raised or could have been raised in the DNR proceedings.[1] FNSB claims that the CEA only authorized DNR to determine the optimal width and location of easements on lands subject to the agreement. DNR did not have authority to decide other issues, FNSB argues, and Rule 602(a)(2) therefore should not apply to those DNR decisions not involving the width and location of easements.

FNSB's argument that Rule 602(a)(2) is inapplicable to its suit is unconvincing for two reasons. First, as the superior court concluded, FNSB's argument that the administrative process created by the CEA applies only to the optimal width and location of land subject to the agreement "is without merit." Paragraph 3 of the Agreement provides:

> The width, location and number of easements required shall be determined according to the following criteria....

Paragraph 6 of the Agreement then provides for administrative resolution of "[a]ny rejections" of the proposed easements of the other party. There is nothing in the CEA to suggest that the term "rejections" in Paragraph 6 refers only to the width and location of proposed easements.

On the contrary, the CEA unambiguously envisioned an administrative determination of the width, location, *and* number of easements.

The second, and more fundamental, problem with FNSB's argument is that FNSB already challenged both the invocation of the CEA and the decisions made pursuant to it during the administrative process. Although FNSB's suit is styled as an independent action advancing different issues than were considered by DNR, the relief sought is essentially the same as that sought before DNR. For example, FNSB explicitly contested the applicability of the CEA during the DNR administrative proceedings, at one point even arguing that the "question" was "one of interpretation of the CEA." Because FNSB had ample opportunity to advance such objections at the administrative level, and because FNSB alleges no surprise or injustice, Appellate Rule 602(a)(2) applies.[2] Having fully availed itself of the administrative review process afforded by the CEA, FNSB was required to challenge the administrative determination within thirty days of that determination.

FNSB attempts to avoid the time limit on administrative appeals by distinguishing each of its present claims from the issues which were, or could have been, considered by DNR. Relying largely upon *Owsichek v. State*, 627 P.2d 616 (Alaska 1981), FNSB maintains that its claim for inverse condemnation arises under the takings clauses of both the Alaska and United States Con-

---

**1.** FNSB apparently concedes that the DNR determinations made pursuant to the CEA's dispute resolution provisions are "administrative determinations" for purposes of Rule 602(a)(2). In *State v. Lundgren Pacific Construction Co.*, 603 P.2d 889 (Alaska 1979), we held that where a corporation which had contracted with the Department of Highways appealed a decision made pursuant to the contract's dispute resolution provisions, the appeal was an appeal of an administrative decision. Similarly, in *Kollodge v. State*, 757 P.2d 1028 (Alaska 1988), this court held that a contractually-created Step IV employee grievance hearing, which was conducted by a hearing officer whose recommendations were acted upon by the Commissioner of Administration, was "agency" action. The DNR determinations made pursuant to the CEA's dispute resolution provisions differ in no material respects from the administrative determinations in *Lundgren Pacific Construction Co.* and *Kollodge*.

**2.** In *Owsichek v. State Guide Licensing*, 627 P.2d 616 (Alaska 1981), this court relaxed the time limit on administrative appeals provided by Rule 45, the predecessor of Appellate Rule 602(a)(2), in order to avoid surprise and injustice to the appealing party. *Id.* at 622. *See also State v. Burgess Constr. Co.*, 575 P.2d 792, 796 (Alaska 1978) ("It is generally held to be incumbent upon the party seeking relaxation of the rules to make a sufficient showing that enforcement of the rule will result in surprise and injustice to that party."). The Borough does not allege surprise or injustice in the present case.

stitutions, and is therefore subject to our statement in *Owsichek* that "the Alaska Constitution can sometimes serve as the jurisdictional basis for an action that might otherwise be characterized as an appeal from an administrative decision." *Owsichek*, 627 P.2d at 620 n. 7. This argument fails. We explained in *Owsichek* that the Alaska Constitution can serve as such a jurisdictional basis for only certain types of actions:

> We held in [*Moore v. State*, 553 P.2d 8, 29 (Alaska 1976)] that the plaintiffs' action was not barred by the statute of limitations specified in Appellate Rule 45 because the action was independent of the earlier administrative proceedings and was based on article VIII, section 10, of the Alaska Constitution. This section sets forth the due process requirements applicable to the lease or sale of state lands. Our holding in *Moore* was based in part on the fact that the plaintiffs were not parties to the earlier administrative proceedings and could not have appealed from the agency's decision. 553 P.2d at 29.
>
> *Owsichek* relies upon much broader constitutional provisions and could have appealed from the Guide Board's decision. We therefore conclude that our holding in *Moore* is inapplicable to this case.

627 P.2d at 620 n. 7. Because FNSB relies on a rather broad constitutional provision, and because FNSB was a party to the DNR proceedings and could have appealed from DNR's determinations, FNSB's claim for inverse condemnation should be viewed as an appeal of the administrative determination.

The borough argues in the alternative that, even if inverse condemnation claims based on regulatory takings are subject to the time limit on administrative appeals, its condemnation claim challenges the state's *physical invasion* of borough lands, and therefore is not subject to the time limit.

A permanent physical taking is qualitatively more intrusive than regulatory takings, FNSB claims, and therefore warrants greater protection under the takings clauses. The borough maintains that the state, as the party entering on the land of another and disturbing another's possession, bears the burden of proving a privilege to do so. This argument fails primarily because it is not possible to divorce the state's use of the land from the administrative action. The right-of-way exists only because of the administrative action. FNSB's claim that the state has no legal right to construct the highway on its lands is a direct challenge to the administrative decision, and is therefore impermissible under *Lundgren Pacific Construction Co.* since it is untimely filed.

FNSB next argues that its claims for quiet title and ejectment are independent of any appeal from the administrative proceedings because these claims arose from the state's entry on borough land. In reality, these actions are but another attempt by FNSB to do indirectly what it could not do directly. After *Lundgren Pacific Construction Co.* and its progeny, these actions must be dismissed because they force the court to reconsider the propriety of an agency determination.

■ FNSB claims that its final causes of action, rescission and restitution, are distinguishable from the administrative appeal because DNR had no authority to determine the validity of the CEA itself. The crux of the borough's argument is that the CEA should be rescinded because AS 38.-04.050 and AS 38.04.055, which the CEA explicitly relies upon, specifically pertain to private land and therefore were not intended to have any application to the disposal of lands by the state pursuant to the municipal land entitlement program.[3]

FNSB also argues that the CEA is void because it contravenes the public policy

---

**3.** The CEA provides:

Whereas AS 38.04.050 states that "Wherever State land is surveyed for purposes of private use, adequate rights-of-way and easements shall be reserved as necessary for access ..." and AS 38.04.055 states that "The director shall reserve easements and rights-of-way on and across land which is made available for private use as necessary to reach or use ... public and private land."; and

....

reflected in former 29.18.201 *et seq.* that DNR was to concern itself solely with the external boundaries and not the internal subdivision of lands to be conveyed under the municipal entitlement program. Even if the CEA is not void as a matter of law, the borough claims the CEA should be rescinded because it was entered into as a result of unilateral or mutual mistake regarding the applicability of AS 38.04.050 and AS 38.04.055.

We find it unnecessary to consider whether FNSB's claims for rescission and restitution are barred by Rule 602(a)(2) because those claims are clearly without merit. While municipal entitlement land may not normally be thought of as private land, DNR evidently considered that the land would become private land and, as such, AS 38.04.050 and AS 38.04.055 were applicable. "The construction of a statute by those charged with its administration is entitled to substantial deference." *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979). More importantly, the CEA indicates that it was not executed solely because of those statutes. The CEA provides:

> Whereas it is in the best interest of residents of the Fairbanks North Star Borough and State of Alaska that access to public and private lands be appropriate to the need being served;

Thus, regardless of the applicability of AS 38.04.050 and AS 38.040.055, there exist valid independent purposes for the CEA. Furthermore, contrary to FNSB's arguments, former AS 29.18.201 *et seq.* do not clearly indicate a legislative intent to reserve to local governments the power to subdivide lands conveyed pursuant to the municipal entitlement program. Because the CEA does not contravene public policy, and because FNSB and the state were authorized to enter into an agreement of this nature, the CEA is not void.[4]

AFFIRMED.

---

**4.** Because we hold that the Borough's claims are barred, we find it unnecessary to consider whether *res judicata* or the statute of limitations bar the Borough's actions.