Gertrude A. DEMMERT and Jessie N. Jim, For Themselves And For All Others Who Are Similarly Situated, Appellants,

v.

KOOTZNOOWOO, INC., Appellee.

No. S–7536.

Supreme Court of Alaska.

July 2, 1998.

Rehearing Denied Aug. 21, 1998.

Fred W. Triem, Petersburg, Douglas M. Branson, Tacoma, WA, for Appellants.

Clark Reed Nichols, Perkins Coie, Seattle, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

MATTHEWS, Justice.

### I. *INTRODUCTION*

The superior court converted a motion for judgment on the pleadings to a motion for summary judgment and granted the motion without advance notice of the conversion. The question in this case is whether this was reversible error. We answer in the affirmative, because the opposing party was not given a reasonable opportunity to oppose the motion as a motion for summary judgment.

### II. *FACTS AND PROCEEDINGS*

In order to impart an understanding of what occurred, it is necessary to describe the proceedings below in some detail. In this class action, certain shareholders of the Angoon village corporation, Kootznoowoo, Inc., challenge the corporation's practice of paying the travel costs of shareholders who are employed as longshoremen by a joint venturer of the corporation at a distant site. The complaint was initially filed in May 1995 and amended on June 30, 1995. The complaint contained five substantive causes of action: first, that the payments were discriminatory dividends in violation of AS 10.06.305(b) and AS 10.06.313; second, that the payments de facto created a class of preferred shares without the preferences being specified in the articles of incorporation in violation of AS 10.06.308; third, that the payments violated the common law equal treatment rule; fourth, that the payments amounted to waste and illegal gifting of corporate assets; and fifth, that the payments were "ultra vires."

Kootznoowoo answered the first amended complaint on July 12, 1995, and moved for judgment on the pleadings on August 2, 1995. It stated two grounds to support its motion for judgment on the pleadings: first, "the

gravamen of Plaintiffs' complaint is in the nature of a derivative action where the alleged injured party is the Corporation"; and second, the plaintiffs were required to join the longshoremen as defendants under Civil Rule 19. This appeal concerns only Kootznoowoo's first theory for summary judgment, the gravamen argument. In its supporting memorandum, Kootznoowoo focused on the complaint's allegations that the challenged payments were corporate waste and ultra vires. It argued that plaintiffs' claims "do not constitute a class action"; instead they "are in the nature of a shareholders['] derivative action to recover alleged wrongs against the Corporation." It went on to contend that the prerequisites for bringing a derivative action had not been met.

Two days after moving for judgment on the pleadings, Kootznoowoo moved for partial summary judgment, seeking a declaration that the two-year statute of limitations contained in AS 09.10.070 governed the claims asserted in the amended complaint. On August 2, 1995, Kootznoowoo moved to change venue from Petersburg to Juneau. In support of this motion, Kootznoowoo filed lengthy affidavits of Gerald J. Engel and Robert E. Manning. The Engel affidavit, among other things, described in detail the circumstances surrounding the challenged payments. These affidavits were explicitly submitted only to support Kootznoowoo's motion for change of venue, but their subject matter went beyond venue issues.

In plaintiffs' response to Kootznoowoo's motion for judgment on the pleadings, filed August 21, 1995, they argued that the gravamen of the suit was the payment of discriminatory dividends, and they filed a lengthy memorandum of law arguing that the remedy for the payment of discriminatory dividends is a direct rather than a derivative action.

In its reply filed September 5, 1995, Kootznoowoo summarized plaintiffs' allegations and inserted a long footnote which quoted extensively from the Engel affidavit "to clarify the nature of the expenditures." Kootznoowoo then turned to plaintiffs' allegations that the payments were discriminatory dividends, and argued that plaintiffs' characterization was not controlling. Instead, the court could determine "by viewing the complaint taken as a whole" that the gravamen of the plaintiffs' complaint was that the corporation had been injured by the payments, and that the plaintiffs had alleged "no direct loss or injury apart from the diminution in the value of their stock due to the injury to the Corporation...." Kootznoowoo's argument thus continued to focus on the pleadings. It did not integrate into its argument the factual averments of the Engel affidavit concerning the travel payments.

At the outset of the oral argument on the motion for judgment on the pleadings, held December 5, 1995, counsel for Kootznoowoo announced that the motion for judgment on the pleadings should be converted to a motion for summary judgment under Rule 56 because of the Engel and Manning affidavits. Kootznoowoo argued that the affidavits set forth undisputed facts. In response, the plaintiffs asserted that the evidence was controverted. They requested the opportunity to take the depositions of Engel and Manning, and to question them with regard to their affidavits.[1]

After oral argument the court recessed briefly, then reconvened and announced its decision. The court stated, "I'm dealing with the motion as if it were a motion for sum-

---

1. Counsel stated:

Good afternoon, your honor. May it please the court, a few responses to defendant Kootznoowoo's position. The evidence is controverted. Defendant Kootznoowoo has stonewalled us on discovery, and we would like to take the depositions of Mr. Engel and Mr. Manning, and question them with regard to their affidavits.

With regard to the business judgment rule, it's not properly before the court. It was introduced by defendant Kootznoowoo in a reply brief, and the universal practice, of course, is that new issues and new matters cannot be raised in a reply brief. Were we to argue against it, we would contravene the evidence of defendant Kootznoowoo. At least four of these directors that we know of have members of their immediate families who benefit from this program of discriminatory travel subsidies. These travel subsidies are paid with respect to shareholding. It's important to note that the recipients of these subsidies are not employees of Kootznoowoo. They're employees of another corporation....

mary judgment." The court then ruled that the challenged distributions were not dividends. "I don't think that there is anything in the record to suggest that there were dividends. I don't think that there's anything in the record to suggest that it was discriminatory."

After announcing its ruling, the court asked co-counsel for the plaintiffs if they had any questions. Counsel began what appeared to be an objection to the ruling on the basis that it concerned the merits rather than the issues raised by "defendant's narrow motions." Counsel's statement was terminated by the court, which repeated its request for questions, implying that it would not entertain objections.[2]

## III. *DISCUSSION*

A. *The Superior Court Committed Reversible Error by Converting Kootznoowoo's Motion for Judgment on the Pleadings to a Motion for Summary Judgment without Giving the Plaintiffs Notice and an Opportunity to Oppose the Motion as a Motion for Summary Judgment.*

1. *The superior court properly converted the motion for judgment on the pleadings to a motion for summary judgment when it considered matters outside of the pleadings.*

Alaska Civil Rule 12(c) provides in part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In *Martin v. Mears*, 602 P.2d 421 (Alaska 1979), we interpreted language in Civil Rule 12(b), which is similar to the language in Civil Rule 12(c), regarding what the trial court should do when matters outside the pleadings are presented. We stated:

The terms of Rule 12(b) make conversion mandatory whenever matters outside the pleadings "are presented to and not excluded by the court." In this regard, "[t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." If the trial court exercises its discretion to exclude such outside materials, conversion is not required, and the motion is then to be decided as a Rule 12(b)(6) motion.

We deem it of significance that Civil Rule 12(b)(6) requires the trial court affirmatively to exclude outside materials if it does not consider the conversion of a Rule 12(b)(6) motion to one for summary judgment to be desirable. Therefore, in the future all trial courts must expressly state whether they have in fact excluded or considered such materials in reaching their decisions. In the instant case the superior court was under a mandatory duty to treat Mears' 12(b)(6) motion "as one for summary judgment and [dispose of it] as provided in Rule 56" after giving the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

*Id.* at 426 (footnotes omitted).

In this case, the court properly announced that it had chosen to deal with the motion for judgment on the pleadings as a motion for summary judgment. Plaintiffs argue, however, that the court failed to give them a "reasonable opportunity to present all material"

2. The full colloquy between the court and counsel on this point is as follows:

The Court: Do you have questions about the ruling, Mr. Triem [co-counsel for plaintiffs]?

Mr. Triem: Yes, your honor. I understand the ruling, but it occurs to me that the oppositions that were filed and the Affidavit of Representative Parties that I filed on behalf of the plaintiffs addressed only the three topics that were before it, and not the merits

of the case itself. In other words, I did not interpret the defendant's narrow motions for. . . .

The Court: Do you have questions about the ruling, Mr. Triem? Mr. Nichols [counsel for Kootznoowoo], questions about the ruling?

Mr. Nichols: No, your honor.

The Court: I don't find that it's any material issue of fact on those issues. Court will be in recess.

pertinent to opposition to a motion for summary judgment, as required by Rule 12(c).

As noted, Kootznoowoo first gave notice that its motion should be considered a motion for summary judgment at oral argument, and the court first notified plaintiffs that the motion would be so converted when it announced its decision. Given these facts, plaintiffs' claim that they were not given a reasonable opportunity to oppose the motion as a motion for summary judgment has at least facial validity. Kootznoowoo argues, however, that the superior court did not commit error, or at least committed no reversible error, for reasons that we examine at this time.

2. *The plaintiffs did not concede on appeal that there are no genuine issues of material fact.*

■ Kootznoowoo argues that the plaintiffs have conceded on appeal that there are no factual issues which require resolution. Kootznoowoo points out that plaintiffs state in the standard of review section of their brief:

> There are no factual disputes presented in this appeal. The trial court granted summary judgment to the defendant and then dismissed the case. The only facts needed for a decision are proved by the evidence and the admissions in the record: the testimony in the affidavits, the exhibits, and the pleadings themselves.

However this statement is preceded by a seemingly conflicting statement:

> This is a case in which the opposing parties harbor vastly differing versions of

the facts and the legal implications of each version of the facts. As such, plaintiffs contend, rendition of a summary judgment, especially one rendered by the court sua sponte, was highly improper. A trial is necessary in order more fully to develop the facts of the case.

These statements concerning the non-existence or the existence of factual issues may be reconcilable. Plaintiffs ask this court to rule as a matter of law that the payments were dividends.[3] Plaintiffs may mean that the averments in the affidavits offered by Kootznoowoo suffice to show that the travel expense payments were dividends, and thus plaintiffs are entitled to the ruling they request, but do not suffice to show that the payments were not dividends; thus summary judgment for Kootznoowoo must be reversed. This is not logically inconsistent, as the proof needed to show the affirmative of a proposition is often different, and more limited, than the proof needed to show the negative of the same proposition.[4] Alternatively, the plaintiffs may be arguing that there are no "factual disputes," because the case on appeal should be decided on procedural grounds, i.e., that the superior court did not comply with Rule 12(c). However, they also argue, in case this court reaches the question whether summary judgment was appropriate, that the evidence on whether the expenditures were discriminatory dividends was controverted.

Regardless of the meaning of the statement on which Kootznoowoo bases its concession argument, plaintiffs' brief may not be read as conceding that there are no genuine issues of material fact relating to the court's

---

3. Plaintiffs have not shown that they are entitled to such relief, however.

4. In the trial court, the plaintiffs opposed Kootznoowoo's motion for oral argument of the following motions: Kootznoowoo's motion for judgment on the pleadings; its motion for partial summary judgment (statute of limitations); plaintiffs' motion for class certification; and their motion to strike Kootznoowoo's opposition to class certification. In their opposition, plaintiffs stated that the *"admissions* contained in these two affidavits [Engel and Manning] and in Kootznoowoo's documents (corporate memoranda, letters, newsletters, and directors' minutes) are all the court needs to decide the merits of

this case." (Emphasis added.) The plaintiffs' use of the term "admissions" suggests that in the trial court as well, plaintiffs meant only that the affidavits and other materials showed that plaintiffs were entitled to the relief they sought on their motions (relating to class certification). From the standpoint of Kootznoowoo as a movant, the affidavits and other materials were not admissions. *See* Evidence Rule 801(d)(2) (admissions are statements of party opponent or party opponent's representative offered against party opponent). Thus the plaintiffs did not concede in this pleading the absence of genuine issues of material fact, especially since Kootznoowoo had not yet sought summary judgment.

grant of summary judgment in favor of Kootznoowoo. In addition to the second statement quoted above, the plaintiffs contend that as a matter of fact, the longshoremen interests have captured the board of directors, and that the judgment of the board is "thoroughly infected by conflicts of interest." More generally, they argue that they have not been given a fair opportunity to develop factual opposition to the converted motion, because this case was in its early stages when the court made its ruling, and because Kootznoowoo had refused to respond to their initial discovery efforts on the ground that Kootznoowoo's pending motion would render discovery "irrelevant." Based on the foregoing, we reject Kootznoowoo's argument that plaintiffs have conceded that there are no genuine issues of material fact.

3. *Plaintiffs were not given notice and a reasonable opportunity to oppose the motion as a motion for summary judgment.*

■ Kootznoowoo also contends that "[a]ppellants were given a reasonable opportunity to present all material made pertinent to Kootznoowoo's motion for summary judgment." Although Kootznoowoo does not directly explain this assertion, Kootznoowoo probably means that plaintiffs should be charged with notice that Kootznoowoo would seek to convert its motion for judgment on the pleadings to a summary judgment motion, or that the trial court would probably convert the motion. The event which might give rise to such notice would be Kootznoowoo's reliance on the affidavits of Engel and Manning. We do not believe that under the circumstances of this case this reliance triggered a duty on the part of plaintiffs to anticipate an unannounced conversion.

■ Kootznoowoo did not rely on, or even mention, the affidavits in its initial motion. When the affidavits were filed, they were explicitly filed only in support of Kootznoowoo's motion for change of venue. Plaintiffs responded to the motion for judgment on the pleadings as such, and not as a motion for summary judgment. They did not mention the affidavits. Further, when, in its reply memorandum, Kootznoowoo did for the first time refer to, and quote, the Engel affidavit, it did so in a manner which was tangential to its primary argument, which continued to be that the complaint was insufficient on its face. Did plaintiffs then have a duty to seek leave of the court to file an additional opposition because the nature of Kootznoowoo's reply might effect a conversion? Although the most cautious lawyer might have done so, we think the answer is no. The function of a reply memorandum is to respond to the opposition to the primary motion, not to raise new issues or arguments, much less change the nature of the primary motion. *E.g., Alaska State Employees Ass'n v. Alaska Public Employees Ass'n,* 813 P.2d 669, 671 n. 6 (Alaska 1991) (argument raised for the first time in reply memorandum could not be considered); *Bittner v. State,* 627 P.2d 648, 649 (Alaska 1981) (summary judgment may not be upheld on the basis of a ground which was urged for the first time in the movant's reply memorandum).

4. *Plaintiffs adequately objected to the superior court's decision and are not required to make a detailed showing of prejudice.*

Kootznoowoo also argues that "[a]ppellants did not object, did not claim prejudice, did not claim surprise, did not claim lack of notice, and did not move for a continuance pursuant to Civil Rule 56(f)." These arguments are in many respects inaccurate. When Kootznoowoo first announced an intention to have its motion treated as a motion for summary judgment, the plaintiffs responded, in effect, that such an action would be inappropriate since the evidence was controverted, that Kootznoowoo had resisted discovery, and that depositions of Engel and Manning were desired. *See supra* note 1. Further, the court first announced its position that it would treat the motion as a motion for summary judgment as a part of its decision on the merits. We cannot expect counsel to interrupt the court when it is announcing its decision. At the end of the oral decision, counsel began to object to the scope of the court's ruling, but the court made it clear that it did not want to hear the objection. *See supra* note 2.

■ Finally, it is inappropriate to require a detailed showing of prejudice from a party who has not had a reasonable opportunity to oppose a motion for summary judgment, whether converted or original. A party opposing a motion for summary judgment is entitled to conduct discovery germane to its opposition. Where the party has not been dilatory in seeking discovery and identifies those people whom it intends to depose, it should be granted an extension under Civil Rule 56(f)[5] to conduct discovery. *Gamble v. Northstore Partnership*, 907 P.2d 477, 485–86 (Alaska 1995). These conditions apply to plaintiffs in this case, for they identified the witnesses whom they wished to depose and, given the compressed sequence of events, Kootznoowoo cannot claim they were dilatory.

We thus reject Kootznoowoo's arguments that the superior court did not commit reversible error. The court violated Rule 12(c) by ruling on the converted motion for summary judgment without giving the plaintiffs a reasonable opportunity to present matter pertinent to the motion.[6] We turn now to the question of the appropriate remedy.

B. *The Superior Court on Remand Can Consider Kootznoowoo's Motion as a Motion for Summary Judgment, as Long as It Complies with the Requirements of Civil Rule 56; Alternatively, It Can Consider the Motion as a Motion for Judgment on the Pleadings, Excluding All Matters Outside the Pleadings.*

■ In *Martin*, we noted that a reviewing court has three available options when it finds that the trial court has not complied with the conversion requirements of Civil Rule 12(b):

> One alternative calls for reversal of the superior court for its failure to comply with the requirements of Civil Rule 12(b) and a remand for proper consideration as either a Rule 12(b)(6) dismissal motion with the outside matters expressly excluded or a Rule 56 motion for summary judgment with the attendant requirements of that rule. A second option is to review the superior court's decision as a Rule 12(b)(6) dismissal, treating that decision as if a motion for dismissal had been granted after exclusion of the outside materials as required. A third option is to review the superior court's decision as an entry of summary judgment, treating that decision as if summary judgment had been granted after the necessary conversion of the Rule 12(b)(6) motion into one for summary judgment.

602 P.2d at 427.

The third option—reviewing the decision as if summary judgment had been granted after conversion—is inappropriate in view of our conclusion that a reasonable opportunity to oppose the converted motion was not afforded. We reached the same conclusion in *Shooshanian v. Wagner*, 672 P.2d 455, 460–61 (Alaska 1983). The second option—reviewing the motion as an unconverted motion for judgment on the pleadings—seems inappropriate since the superior court's decision and the parties' appellate briefs focus on the propriety of summary judgment.

We choose, therefore, to vacate the judgment and remand this case to the superior

---

5. Civil Rule 56(f) provides:

    Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

6. We note our agreement with two recent federal circuit cases on Rule 12(c) conversions having certain factual similarities: *Whiting v. Maiolini*, 921 F.2d 5 (1st Cir.1990) (motion for judgment on pleadings initially accompanied by outside

evidence; movants gave express notice of intended conversion in reply brief, four days before summary judgment granted; held: no reasonable opportunity to respond; court stressed that discovery was in early stages); and *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687 (2d Cir. 1990) (motion for judgment on the pleadings accompanied by affidavits stressed jurisdictional issues, but contained merits claim; opposition including affidavit focused on jurisdictional issues, also discussed merits claim; held following summary judgment: no reasonable opportunity to respond; court relied on primary focus of the motion and opposition).

court. On remand, the superior court may consider Kootznoowoo's motion as a motion for summary judgment "with the attendant requirements" of Civil Rule 56. *Martin*, 602 P.2d at 427. Alternatively, the superior court may consider the motion as a motion for judgment on the pleadings, excluding all matters outside the pleadings. If the court chooses this option, it may find guidance on the issue of whether a direct or derivative action is appropriate in our recent opinion in *Hanson v. Kake Tribal Corporation*, 939 P.2d 1320 (Alaska 1997).

## IV. CONCLUSION

For the above reasons the judgment in this case is VACATED and this case is RE-MANDED to the superior court for further proceedings in accordance with this opinion.

FABE, Justice, with whom COMPTON, Chief Justice, joins, dissenting.

## I. INTRODUCTION

Although I agree with the court's opinion that the trial court erred in converting the motion to dismiss into a summary judgment motion without prior notice of the conversion, I disagree with its conclusion that the judgment should be vacated and remanded. I believe that it would be preferable to proceed under the second option presented by *Martin v. Mears*, 602 P.2d 421, 427 (Alaska 1979), which allows us to "review the superior court's decision as a Rule 12(b)(6) dismissal, treating that decision as if a motion for dismissal had been granted after exclusion of the outside materials as required." Because analysis under the second *Martin* option reveals that the superior court was correct in concluding that plaintiffs' allegations must proceed as derivative actions, I respectfully dissent.

## II. DISCUSSION

The court rejects the second *Martin* option on the theory that it "seems inappropriate since the superior court's decision and the parties' appellate briefs focus on the propriety of summary judgment." Op. at 612. First, when we review the trial court's conversion of a Rule 12(b)(6) motion to a motion for summary judgment, it is inevitable that the trial court's decision and the parties' appellate briefs will focus on the propriety of summary judgment. Were this fact sufficient to defeat our selection of the second option, the second option would never be available. Second, although the appellate briefing focused on the propriety of summary judgment, the parties' arguments in the trial court focused almost exclusively on the legal issues raised by the motion to dismiss. Specifically, the plaintiffs argued that their claims were appropriately brought as direct actions, and Kootznoowoo contended that "the gravamen of Plaintiffs' complaint is in the nature of a derivative action where the alleged injured party is the Corporation."

The issue of whether plaintiffs' claims were required to be filed as derivative actions should have been decided on the basis of the pleadings without reliance on outside materials. Although "the trial court is free to disregard the parties' characterization of the cause of action," it is my view that the law does not "afford[ ] the trial court latitude in making its determination" of the nature of the action. *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1334 (Alaska 1997) (Fabe, J., dissenting). Rather, the trial court must look to the body of the complaint to determine its true nature. *See id.* In this case, despite plaintiffs' characterization of their claims as direct actions, the superior court concluded that plaintiffs' allegations of corporate waste and *ultra vires* payments must proceed as derivative actions. For the reasons discussed below, I believe that the superior court's conclusion was correct as a matter of law.

Scrutiny of the plaintiffs' complaint itself discloses that there is an even stronger case to be made than in *Hanson* that the allegations must proceed as derivative actions. First, the plaintiffs in this case expressly allege in the complaint that the travel payments at issue were *ultra vires* and "amount[ed] to waste and gifting of corporate assets." Because these causes of action represent breaches of the directors' fiduciary duty to the corporation and a harm to the corporation as a whole, they should be treated as derivative actions. *See Hanson*, 939 P.2d at 1327 (stating that "'when a wrong

has been done to the corporation, the shareholder's right to sue the directors or wrongdoers for redress is derivative and not primary'") (quoting Charles R.P. Keating & Jim Perkowitz–Solheim, 13 *Fletcher Cyclopedia of the Law of Private Corporations* § 5928 (perm. ed. rev.vol.1993)); 12B *Fletcher, supra,* § 5911 ("The action is derivative if the gravamen of the complaint is injury to the corporation. . . .").

Second, the travel payments described in the complaint are even less like dividends than the distributions in *Hanson.* Dividends are generally distributed pro rata among shares. *See Black's Law Dictionary* 429 (5th ed.1979). A finding that a distribution is a dividend "establishes a contractual right on the part of the individual shareholder to sue the corporation directly." *Hanson,* 939 P.2d at 1335 n. 6 (Fabe, J., dissenting). In *Hanson,* the distributions were tied to the number of shares owned by each shareholder such that only shareholders with one hundred shares could participate in the financial security plan. *See id.* at 1322. The travel payments in this case, by contrast, were unrelated to the number of shares owned by each shareholder.

Third, the percentage of shareholders allegedly given preferential treatment in this case is smaller than in *Hanson* and constitutes a small minority of the shareholder class. The plaintiffs allege in the complaint that approximately sixty to seventy of the Kootznoowoo shareholders received travel subsidies and that approximately 550 to 600 did not. Where approximately ten percent of shareholders have received travel subsidies, the proper remedy is not to extend the illegal distributions to the remaining ninety percent of shareholders. Rather, common sense prescribes that a derivative action is appropriate. If, as the complaint alleges, the directors' travel payments were *ultra vires* and amounted to waste and gifting of corporate assets, the proper remedy would be to require the directors to repay the corporation. This approach would make the corporation whole and place the plaintiffs in the same position they would have been in had the improper distributions not been made. Although the subsidized shareholders would re-

ceive a windfall, the windfall would be paid by the directors, not the corporation. Thus, "such a 'windfall' would not harm the plaintiffs. The plaintiffs would receive no more and no less than what they were entitled to: the full value of their shares in the corporation. Any extra payment to shareholders who received distributions under the plan would be funded entirely by those found liable for the impermissible distributions, not by the plaintiffs or the corporation." *Hanson,* 939 P.2d at 1334 (Fabe, J., dissenting).

Finally, the court in *Hanson* was particularly concerned with providing the plaintiffs a meaningful remedy. *See id.* at 1326–27. The court observed that it was unlikely that a derivative suit would yield an adequate remedy for the plaintiffs because the beneficiaries of the payments would not be liable and because it was "unlikely that any damages collected from the responsible directors and officers would approximate the sum of payments made under the plan." *Id.* at 1327. In this case, however, the complaint alleges improper payments to only sixty to seventy shareholders, and there is nothing to suggest that the directors would be unable to repay the amount spent on these travel payments. This rationale for departing from the basic principles of corporate law and for allowing a direct action is therefore less a factor in this case than it was in *Hanson.*

## III. CONCLUSION

Because the gravamen of plaintiffs' complaint is a wrong to the corporation as a whole, it is my view that the superior court was correct as a matter of law in rejecting plaintiffs' characterization of their allegations as direct actions and in determining that the claims were in fact derivative in nature. Given the trial court's legal conclusion, I believe this court should proceed under the second option provided by *Martin* and review the court's decision as a Rule 12(b)(6) dismissal. This approach would avoid the need for the parties to relitigate the issues and would promote judicial efficiency. As the court declines to take this approach, I dissent.