James W. WHITE, Gregory Micallef, and Peninsula Pipeline Company, Inc., Appellants,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellee.

No. S–9199.

Supreme Court of Alaska.

Dec. 15, 2000.

Robert C. Erwin and Roberta C. Erwin, Erwin & Erwin, LLC, Anchorage, for Appellants.

Bonnie E. Harris, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

James White, Gregory Micallef, and Peninsula Pipeline Company (collectively, "White") sued the Alaska Department of Natural Resources for breach of contract because the department refused to transfer their oil and gas leases, which expired while White's applications for transfer were pending. White alleged that this breach amounted to a taking of his property without due process of law. The superior court granted summary judg-

ment for the state, concluding that White's claim was barred by res judicata because of this court's prior decision in a related case, *White v. State*.[1] We affirm, holding that res judicata applies to White's case because his present claims arise from the same facts and transaction considered in *White*, and could have been raised in that prior action.

## II. FACTS AND PROCEEDINGS

White acquired interests in two state oil and gas leases that were set to expire on December 1, 1990.[2] The leases encompassed state mental health trust land.[3] In February and April 1990 White applied to transfer portions of his lease interests to third parties. The department took no immediate action on his applications.

In July 1990 a superior court judge presiding over an ongoing case involving the status of state mental health trust lands, *Weiss v. State*,[4] issued an order—the "*Weiss* injunction"—generally barring the state from transferring any interest in mental health trust land without prior court approval.[5] The department stopped processing applications for transfer of all leases located on mental health trust lands. In September 1990 White requested that the department extend his leases to compensate for time lost owing to the *Weiss* injunction.[6] The department denied White's request, stating that it could take no action unless White first obtained permission from the *Weiss* court.[7] White did not appeal this decision, made no effort to obtain a modification of the *Weiss* injunction, and took no other action to extend

his leases.[8] The leases expired as of December 1, 1990.[9]

More than three months after the leases expired, White complained to the department that he had been "denied an opportunity to obtain a drilling permit, or seek an extension of" the leases as a result of the *Weiss* injunction.[10] The department rejected White's complaint, ruling that the leases had expired at the end of their primary term as a result of White's inaction, not as a result of the injunction. White appealed to the superior court, which upheld the department's decision.[11]

White then appealed to this court. In *White v. State*, we affirmed the superior court's ruling, concluding that substantial evidence supported the department's determination that White was responsible for allowing the leases to expire, because he had failed to make good faith efforts to extend them beyond their primary term.[12] In reaching this conclusion, we noted that White had engaged in no productive activity to extend his leases before the *Weiss* injunction went into effect and that he had made no attempt to modify the injunction even though he knew that another lessee of state lands had successfully done so.[13] We also noted that White had failed to show that he had made any attempt to apply for a drilling permit (which would have extended his leases), or even that enough time remained to go through the ordinary permitting process between the day that the *Weiss* injunction was issued and the day that his leases expired.[14]

Five months after this court issued its decision in *White*, White filed this action for

1. Mem. Op. & J. No. 0812 (Alaska, March 6, 1996).

2. *See id.* at 1–2.

3. State mental health trust land is land that was conveyed to the state under the Alaska Mental Health Enabling Act of 1956. *See* Pub.L. No. 84–830, 70 Stat. 709 (1956); *see also White*, Mem. Op. & J. No. 0812 at 2.

4. *See Weiss v. State*, No. 4FA–82–2208 CI (Alaska Super., July 9, 1990).

5. *See White*, Mem. Op. & J. No. 0812 at 2.

6. *See id.* at 3.

7. *See id.*

8. *See id.* at 5.

9. *See id.* at 2–3.

10. *Id.* at 3.

11. *See id.* at 4.

12. *See id.* at 5.

13. *See id.*

14. *See id.*

breach of contract and unlawful taking of property. White asserted that the *Weiss* injunction had caused the department to stop processing his pending applications for lease assignments, that the department's inaction amounted to a breach of its duties under the lease contracts, and that this breach caused the termination of the leases, thereby wrongfully depriving him of his property.

The department, citing *White*, moved for judgment on the pleadings. The superior court granted the department's motion, treating it as one for summary judgment, since the court deemed *White* to be a matter outside the pleadings. The court reasoned that White's new claims were based on the same acts litigated in *White*, that White could have asserted these claims as part of his earlier action, and that res judicata therefore barred him from relitigating the claims in a new cause of action. White appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We review de novo a superior court's order granting a motion for summary judgment or for judgment on the pleadings.[15] We will affirm the order if our review of the record in the light most favorable to the non-moving party convinces us that the material facts are undisputed and entitle the moving party to judgment as a matter of law.[16]

### B. *White's Claims Are Barred by Res Judicata.*

The superior court, applying the doctrine of res judicata, found White's action

precluded by this court's ruling in *White*.[17] Under the doctrine of res judicata,

> a judgment in a prior action operates as a bar to a subsequent action if (1) the prior judgment was a final judgment on the merits, (2) a court of competent jurisdiction rendered the prior judgment, and (3) the same cause of action and same parties or their privies were involved in both suits.[18]

White acknowledges that our decision in *White* was a final judgment and that the present case and *White* involve the same parties. White argues, however, that the issues raised in his former action and decided in *White* are not identical to his present claims for breach of contract and inverse condemnation. But res judicata precludes subsequent actions not only on claims actually raised in a prior proceeding, but also on related claims arising out of the same transaction that could have been raised in that proceeding. For purposes of res judicata, the prior judgment extinguishes " 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose.' "[19] "What factual grouping constitutes a 'transaction' is determined by 'whether the facts are related in time, space, origin, or motivation,' and 'whether they form a convenient trial unit.' "[20] Hence, to determine if two claims comprise the same cause of action, we compare their underlying facts and the transactions from which they arose, not the precise legal theories that their pro-

15. *See Mathis v. Sauser*, 942 P.2d 1117, 1120 (Alaska 1997); *McAdoo v. Diaz*, 884 P.2d 1385, 1387 n. 2 (Alaska 1994).

16. *See Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998).

17. White argues that the state waived the right to rely on res judicata in the superior court because it failed to assert the defense in answering White's complaint. *See* Alaska R. Civ. P. 8(c), 12(b). But when the state later asserted the defense of res judicata in its motion to dismiss White's complaint, White did not object on procedural grounds; instead, he contested the defense on its merits. By so doing, White effectively agreed to treat the defense as part of the

pleadings. *See Oaksmith v. Brusich*, 774 P.2d 191, 199 (Alaska 1989).

18. *Tope v. Christianson*, 959 P.2d 1240, 1243 (Alaska 1998) (quoting *Blake v. Gilbert*, 702 P.2d 631, 634–35 (Alaska 1985), *overruled on other grounds by Bibo v. Jeffrey's Restaurant*, 770 P.2d 290, 295 (Alaska 1989)).

19. *DeNardo v. State*, 740 P.2d 453, 456 (Alaska 1987) (quoting *State v. Smith*, 720 P.2d 40, 41 (Alaska 1986)).

20. *Tope*, 959 P.2d at 1244 (quoting *Plumber v. University of Alaska Anchorage*, 936 P.2d 163, 167 (Alaska 1997)).

ponent selects to describe them.[21]

The legal theory that White advanced in his original administrative action—the theory we ultimately rejected in *White*—was that the *Weiss* injunction was a *"force majeure"* that entitled him to extend his leases because it stalled his efforts to transfer portions of his lease interests, thereby preventing him from developing the leases before their original expiration date. Although White's subsequent contract and condemnation claims advance new legal theories, they challenge the same departmental actions—the department's failure to process White's transfer as a result of the *Weiss* injunction—and evolve from the same basic factual setting as his earlier *force majeure* claim. For purposes of res judicata, then, White's current action arises from the same transaction that he litigated to final judgment in *White*.

White does not dispute that he was aware of the department's alleged breach of contract when he raised his *force majeure* theory in the earlier administrative action. Moreover, he concedes that his inverse condemnation claim stems directly from this breach. White nevertheless insists that he could not have raised his breach of contract claim in the administrative proceeding because the department lacked jurisdiction to

decide whether it breached its own contract. But this argument lacks merit.

White's contract and inverse condemnation claims fit comfortably within the scope of an ordinary administrative claim. The department's regulations require oil and gas lessees to pursue all grievances through administrative remedies, making no exception for contract claims.[22] The commissioner is the final administrative adjudicator of such grievances.[23] In other contexts, we have recognized the authority of administrative agencies to consider breach of contract claims in which the agencies were parties.[24] And White advances no persuasive reasons to treat his claims differently.

Moreover, White chose to press an administrative claim raising only his *force majeure* theory. After an adverse agency decision, White appealed to the superior court, but made no attempt to raise his contract claim then.[25] He likewise failed to mention his breach of contract claim in appealing the superior court's decision to this court. Having elected to pursue one narrow legal theory to final judgment in his administrative action, White was no longer free to reopen the litigation simply by reshaping his claim to fit a new and broader legal mold.[26] The final judgment in *White* extinguished all the issues that were or could have been considered by the agency and the superior court in that

21. *See Tope*, 959 P.2d at 1244.

22. *See* 11 Alaska Administrative Code (AAC) 88.155 (requiring oil and gas lessees that have grievances with the state to pursue the administrative procedures provided by 11 AAC 02.010, et seq.); *see also Danco v. State*, 924 P.2d 432, 434 (Alaska 1996) (rejecting appellant's attempt to characterize his claim for interest on funds submitted in connection with oil and gas lease bids as a tort or contract claim against the state: "[o]il and gas lessees and lease bidders which have grievances with the State must pursue the administrative procedures provided by 11 AAC 02.010").

23. *See* 11 AAC 02.010(c).

24. *See, e.g., Broeckel v. State, Dep't of Corrections*, 941 P.2d 893, 896 (Alaska 1997) (rejecting breach of contract claim by prisoner because of failure to pursue Palmer Correctional Center's formal grievance procedures); *Calhoun v. State, Dep't of Transp. and Pub. Facilities*, 857 P.2d

1191, 1194 (Alaska 1993) (finding a contractor's breach of contract claim against the state barred by res judicata because he did not preserve it in his administrative appeal).

25. Predicting that the department would never have admitted that it breached a contract, White has separately invoked the doctrine of futility as a justification for failing to raise his contract claim before the department in his administrative action. This argument lacks merit, because White fails to back it up with any specific evidence of the department's partiality. *See Diedrich v. City of Ketchikan*, 805 P.2d 362, 370 (Alaska 1991). In any event, futility cannot explain White's failure to raise his contract claim in conjunction with his superior court appeal of the department's ruling on his *force majeure* claim.

26. *Cf. Fairbanks North Star Borough v. State*, 826 P.2d 760, 762 (Alaska 1992) ("However denominated, a claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination.").

case.[27]

White further asserts, however, that he had no inverse condemnation claim to assert until the department's refusal to transfer the leases became final. Because White bases his inverse condemnation claim on the department's inaction, White reasons that he would have suffered no damages if the department had eventually agreed to extend his leases. Thus, White contends, the improper taking could not have occurred until sometime after the expiration date of the leases.[28]

To support this argument, White cites *Ehrlander v. State, Department of Transportation and Public Facilities*.[29] But *Ehrlander* is inapposite. There, a borough platting board preliminarily rejected Ehrlander's application to subdivide his property. In a subsequent inverse condemnation action filed directly in superior court, the superior court ruled that Ehrlander had failed to exhaust his administrative remedies, because he neglected to appeal the platting board's decision to the borough's planning commission. In reversing the superior court's ruling, we simply observed that Ehrlander could reasonably have elected not to appeal to the planning commission on the ground of inverse condemnation, since the platting board had expressly indicated that it would "take a second look" at his application to subdivide in approximately six months.[30]

In the present case, by contrast, the department responded to White's September 1990 request to extend his leases by unequiv-ocally stating that it would refuse to take action to transfer or extend White's leases unless he first obtained a modification of the *Weiss* injunction from the court presiding over that case. In so responding, the department firmly adopted its position on the issues of lease transfer and extension. Moreover, White had already put the agency on notice that he considered it to be in breach of his lease contracts. Thus, by his own account, White had already lost the "economic advantages of ownership."[31] Accordingly, assuming that a viable inverse condemnation claim might arise from this set of circumstances, the claim by then would have fully accrued.

Yet despite the obvious ripeness of his claims for breach of contract and inverse condemnation, White neither appealed the department's decision nor attempted to relax the *Weiss* injunction; he simply let his leases expire and, months later, filed an administrative action. When he filed that action, White could have asserted at least three alternative legal theories—*force majeure*, breach of contract, and inverse condemnation—that might have yielded two alternative forms of relief—an extension of his leases or an award of damages. Although White elected to pursue only his *force majeure* claim, nothing prevented him from simultaneously asserting all three theories in his administrative action, or from seeking both forms of alternative relief.

White therefore had ample opportunity to litigate these claims in the procedural context of his initial administrative action; the fact that he chose not to, whether "because of a strategic decision or ignorance or other rea-

---

27. *See id.* at 763.

28. Although White couches his argument in terms of exhaustion of administrative remedies rather than res judicata, he fails to specify precisely when he believes that his condemnation claim accrued. It is thus possible to read his argument as suggesting that his condemnation claim did not even accrue until we finally resolved the *force majeure* issue with our decision in *White* and that res judicata therefore does not preclude that claim. In other words, it seems that White might be claiming that he could not have raised his condemnation claim before we issued *White*, because, if he had prevailed on his *force majeure* theory in the administrative action and had won an extension on his leases, he ultimately would not have suffered a taking, and would then have had no cause of action for condemnation. We thus deal with White's argument in addressing the issue of res judicata, even though its primary relevance is on exhaustion of administrative remedies-an alternative theory adopted by the trial court that we find it unnecessary to consider. *See infra* note 40.

29. 797 P.2d 629 (Alaska 1990).

30. *Id.* at 635 n. 16.

31. *Fairbanks N. Star Borough v. Lakeview Enters., Inc.*, 897 P.2d 47, 52 (Alaska 1995) (quoting *Homeward Bound, Inc. v. Anchorage Sch. Dist.*, 791 P.2d 610, 614 (Alaska 1990) (A property owner can recover damages for inverse condemnation if the state's activities deprive him of the "economic advantages of ownership.")).

son," does not exempt him from the principles of res judicata.[32] To hold otherwise would defeat the doctrine's underlying goal of judicial finality—that "there shall be a termination of litigation and the participants [shall not be] vexed twice for the same cause."[33]

### C. White Was Not Prejudiced by the Court's Conversion of the State's Motion for Judgment on the Pleadings into One for Summary Judgment.

In the superior court, the state raised its res judicata argument in a motion for a judgment on the pleadings,[34] asking the court, alternatively, to consider its motion as one for summary judgment. In response to the state's motion, White argued against a judgment on the pleadings and asked for additional time to submit affidavits and other evidentiary materials if the court chose to treat the state's motion as one for summary judgment.[35] Without addressing White's request for additional time, the superior court simply deemed the state's motion to be a motion for summary judgment and, on that basis, entered judgment in favor of the state.[36]

White argues on appeal that the superior court erred by converting the state's motion for a judgment on the pleadings into a motion for summary judgment without giving him additional time to marshal evidence and submit affidavits. Yet we conclude that any error in failing to adhere strictly to the requirements of Rule 56 was plainly harmless.

The superior court treated the state's motion as one for summary judgment in only a single respect: by taking notice of this court's decision in White, a matter that the superior court deemed to be outside the pleadings. We assume for present purposes that courts deciding motions for judgment on the pleadings under Rule 12(c) may not judicially notice prior appellate decisions without reaching beyond the face of the pleadings.[37]

---

**32.** *Plumber v. University of Alaska Anchorage,* 936 P.2d 163, 168 (Alaska 1997).

**33.** *Palfy v. First Bank of Valdez,* 471 P.2d 379, 384 (Alaska 1970) (quoting 1B J. Moore, *Federal Practice* ¶ 0.405(2), at 631 (2d ed.1968)).

**34.** *See* Alaska Rule of Civil Procedure 12(c), which provides:

> *Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**35.** Alaska Civil Rule 77 allows a party opposing summary judgment fifteen days to respond to the motion and the right of oral argument. *See* Alaska R. Civ. P. 77(c), (e); *see also Shooshanian v. Wagner,* 672 P.2d 455, 460–61 (Alaska 1983) (declining to review the trial court's sua sponte dismissal as a motion for summary judgment because appellants did not have sufficient notice or an adequate opportunity to respond under Civil Rules 77(c) and (e)). Under Civil Rule 56(c), the party's response may include affidavits covering all material facts in dispute.

**36.** We have held that when a trial court converts a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted into a motion for summary judgment without following the required procedures, three options are available to this court: (1) reverse and remand for proper consideration as a Rule 12(b)(6) dismissal motion with the outside matters expressly excluded, or as a Rule 56 motion with the attendant requirements of that rule; or (2) review the superior court's decision as a Rule 12(b)(6) dismissal, as if the motion had been granted after exclusion of outside materials as required; or (3) review the superior court's decision as an entry of summary judgment. *See Martin v. Mears,* 602 P.2d 421, 427 (Alaska 1979). The same standard applies to Rule 12(c) motions for judgment on the pleadings. *See Demmert v. Kootznoowoo, Inc.,* 960 P.2d 606, 609 (Alaska 1998).

**37.** Some cases do support the contrary view. *See, e.g., Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.,* 969 F.Supp. 907, 915–16 (D.N.J.1997), *rev'd on other grounds,* 159 F.3d 129 (3d Cir.1998) ("A court may take judicial notice of decisions of administrative bodies without converting motions to dismiss into motions for summary judgment."); *Nix v. Fulton Lodge No. 2 of Int'l Ass'n of Machinists and Aerospace Workers,* 452 F.2d 794, 797–98 (5th Cir.1971) ("Xerox copies of opinions of this court, attached to a memorandum of law submitted ... in connection with the Rule 12(b)(6) motions" were not matters "outside the pleadings sufficient to transform a Rule 12(b)(6) motion into a motion for summary judgment."); *but see United Parcel Serv. Inc. v. California Pub. Utils. Comm'n,* 839 F.Supp. 702, 704 (N.D.Cal.1993), *rev'd on other*

Even so, White has failed to show any prejudice resulting from the superior court's failure to allow him additional time before entering judgment against him based on *White*. The superior court relied on *White* not as a source of factual information, but only as a basis for its legal conclusion that White's current claims have already been litigated and are now barred by the doctrine of res judicata. The critical issue in determining if White has been prejudiced is whether he " 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.' " [38] Here, in his opposition to the state's motion for judgment on the pleadings, White recognized and discussed the possibility that the superior court might treat the state's motion as one for summary judgment. Indeed, at oral argument before the superior court, he expressly asked the court to exercise its discretion to go outside the pleadings, offering to produce evidence that he deemed favorable to his position. Yet all of this evidence related to the merits of White's contract and inverse condemnation claims; [39] none addressed the determinative legal issue of res judicata—the only issue upon which the court considered materials outside the pleadings. And on appeal White has suggested no other evidence or arguments that might rescue his claim.

Thus, even if the superior court had given White additional time to muster and formally present evidence in response to the state's summary judgment motion, we find no reason to expect that this evidence would have altered the superior court's ruling, which bypassed the factual merits of White's claims and fixed on narrow legal principles. Accordingly, White has failed to show prejudicial error. [40]

## IV. CONCLUSION

Because we conclude that *White* precludes White's breach of contract and inverse condemnation claims under the doctrine of res judicata, we AFFIRM the superior court's judgment.

---

grounds, 77 F.3d 1178 (9th Cir.1996) ("[W]here a motion to dismiss raises [a res judicata] defense not apparent on the face of the pleadings, ... conversion to a motion for summary judgment is proper.").

**38.** *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990) (quoting *National Ass'n of Pharmaceutical Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 911 (2d Cir.1988)). In *Demmert v. Kootznoowoo, Inc.*, this court noted that it is inappropriate to require a detailed showing of prejudice from a party that has not had a reasonable opportunity to oppose a motion for summary judgment. *See* 960 P.2d 606, 612 (Alaska 1998). But here, White has shown no prejudice whatsoever. Moreover, in *Demmert*, the defendant first gave notice that its motion should be considered a motion for summary judgment at oral argument; the plaintiffs objected, arguing that there were genuine issues of material fact and that additional discovery was needed. *See id.* at 610–12. By contrast, White anticipated in his opposition to the state's motion that it might be treated as a motion for summary judgment. He does not claim that the additional discovery was needed. Finally, the only potential issues of material fact he raises concern whether White had applied to transfer interests in his leases at the time of the *Weiss* injunction. This evidence is not relevant to the state's affirmative defenses.

**39.** White referred in oral argument to a letter indicating that Micallef, one of the plaintiffs, had filed lease assignment applications with the department, and to similar deposition testimony by White. White also referred to paragraph 18 of the oil and gas lease contracts, which White argued required the state to process lease assignments.

**40.** Because we conclude that White's claim is barred by res judicata, we need not address White's challenge to the superior court's alternative conclusion that his action is functionally an administrative appeal and, as such, is barred as untimely under Appellate Rule 602(a)(2).